Luther W. BORROR, Administrator of the Estate of Bonita Ann Curtician, Deceased

v.

SHARON STEEL COMPANY, a Corporation, Appellant.

No. 14327.

United States Court of Appeals Third Circuit.

Argued Sept. 26, 1963.

Decided Jan. 27, 1964.

Bruce R. Martin, Pittsburgh, Pa., at the time of argument with Pringle, Bredin & Martin, Pittsburgh, Pa., for appellant.

James E. McLaughlin, Pittsburgh, Pa. (Dennis C. Harrington, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and KALODNER and GANEY, Circuit Judges.

BIGGS, Chief Judge.

Borror, named as administrator of the estate of Bonita Ann Curtician, brought suit by a single complaint under the Pennsylvania Survival Act, 20 P.S. § 320.601, and under the Pennsylvania Wrongful Death Act, 12 P.S. § 1601 et seq., to recover damages against Sharon Steel Company. The details of how Miss Curtician met her death need not be given here. It is sufficient to state for the purposes of the instant appeal that on July 20, 1960, there was an explosion at the Sharon Steel Company at Sharon, Pennsylvania, and as a consequence thereof Miss Curtician sustained injuries which resulted in her death on the same day. The complaint alleges that Sharon was negligent. Miss Curtician was survived by her mother and father.

The case was tried to a jury and resulted in a judgment in favor of the estate of Miss Curtician under the Survival Act in the sum of $10,000 and in a judgment in favor of Miss Curtician's mother and father under the Wrongful Death Act in the sum of $15,000. The judgment recovered under the Survival Act has not been appealed. The judgment recovered by the Curticians under the Wrongful Death Act is the subject of this appeal. In the court below the defendant, Sharon, moved for a directed verdict in its favor. The grounds of that motion are substantially the same, we believe, as those presented to this court by Sharon for a reversal of the judgment and for the dismissal of the action.

It is conceded that Miss Curtician was and her parents are citizens of Pennsylvania and that Sharon is a corporation of the Commonwealth, and further that Borror, the plaintiff, is a citizen of West Virginia, appointed administrator of Miss Curtician's estate by the Register of Wills [1] of Mercer County, Pennsylvania, and that he brought the Wrongful Death Act suit at bar as administrator. There is no contention that the suit at bar is a collusive one prohibited by Section 1359, 28 U.S.C., as was the contention in Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (3 Cir. 1959), but the standing of Borror to maintain the suit has been brought into issue here as it was in Jaffe v. Philadelphia and Western R. Co., 3 Cir., 180 F.2d 1010 (1950), in Fallat v. Gouran, 3 Cir., 220 F.2d 325 (1955), in Corabi, supra, and to some extent at least in Berkowitz v. Philadelphia Chewing Gum Corporation, 3 Cir., 303 F.2d 585 (1962).

We have difficulty in grasping Sharon's theory of defense. The "Statement of Question Involved" in its brief states the following, which we believe embodies the substance of Sharon's position: "Where, as here, the Pennsylvania Wrongful Death Acts vest the cause of action for minor decedent's death in minor's parents, who were both Pennsylvania citizens at the time suit was brought, and defendant was also a citizen of Pennsylvania; and, where Pennsylvania Rule of Civil Procedure Rule 2202(b) gave the parents the right to sue for said wrongful death in their own names at the time this suit was brought; does the Pennsylvania Rule of Civil Procedure which permits wrongful death actions to be brought by the administrator on behalf of the parents make this a case or controversy between citizens of different states merely because the parents elected not to sue in their own names, but caused suit to be brought in the name of a citizen of West Virginia who has been appointed administrator of the minor's es-

---

1. We assume that Borror was appointed administrator pursuant to 20 P.S. § 320.-301 and § 320.305(b) (5). This point has not been briefed or referred to by the parties.

tate?" Sharon's answer to its own question is "no."

## I.

12 P.S. § 1602[2] provides that under the circumstances here present the parents of Miss Curtician are entitled to the recovery. Compare 12 P.S. § 1601[3] which provides that if suit under the Wrongful Death Act is not brought by the survivor's spouse, the suit may be brought by the administrator.

Rule 2201, Pa.Rules of Civil Procedure, 12 P.S.Appendix, defining the term "personal representative," states that " 'personal representative' means the executor or administrator of the estate of a decedent duly qualified by law to bring actions within this Commonwealth."

Rule 2202 provides: "(a) Except as otherwise provided in clause (b) of this rule, an action for wrongful death shall be brought only by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death. * * * (b) If no action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in the damages."

Rule 2203 providing procedure to remove a plaintiff in a wrongful death action states: "(a) Any person entitled by law to recover damages in an action for wrongful death may petition the court in which an action for such wrongful death is pending to remove the plaintiff and to substitute as a new plaintiff any person entitled by law to recover damages in the action or a personal representative of the decedent." Rule 2203(b) states: "After hearing, of which due notice shall be given to the plaintiff in the action and to all persons entitled by law to recover damages, the court may remove the plaintiff and order the substitution prayed for, if it deems the same advisable." A single note, appended to the text of the rule, 12 P.S.Appendix, p. 490, states: "This rule has the effect of making the plaintiff in the wrongful death action accountable to the court in which the action is brought for his conduct therein. In addition, it permits the parties beneficially interested in the damages recovered in the action to exercise some supervisory control over the conduct of the action by enabling them to obtain the assistance of the court if the action is not properly conducted on their behalf."

Rule 2205 provides: "When an action for wrongful death has been instituted, the plaintiff shall give notice, by registered mail or in such other manner as the court shall direct by general rule or special order, to each person entitled by law to recover damages in the action, that an action has been instituted for wrongful death, naming the decedent and stating the court, term and number of the action."

**2.** 12 P.S. § 1602 provides as follows: "The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; and that such husband, widow, children, or parents of the deceased shall be entitled to recover, whether he, she, or they be citizens or residents of the Commonwealth of Pennsylvania, or citizens or residents of any other state or place subject to the jurisdiction of the United States, or of any foreign country, or subjects of any foreign potentate; and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors under the laws of this Commonwealth. If none of the above relatives are left to survive the decedent, then the personal representative shall be entitled to recover damages for reasonable hospital, nursing, medical, funeral expenses, and expenses of administration necessitated by reason of injuries causing death."

**3.** 12 P.S. § 1601 provides as follows: "Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned."

Rule 2206 provides in part: "(b) When as the result of a verdict, judgment, compromise, settlement or otherwise it has been determined that a sum of money is due the plaintiff in an action for wrongful death, the court, upon petition of any party in interest, shall make an order designating the persons entitled to share in the damages recovered and the proportionate share of the net proceeds to which each is entitled. * * * " "(d) When an order designating the persons entitled to share in the damages has been entered, the defendant may pay the amount due * * * to the plaintiff who shall hold the money as trustee for the persons designated in the order and shall mark the action discontinued or the judgment satisfied, as the case may be." It should be noted that the Rules Committee's "Note" to subsection (d) states that the rule in effect "eliminates the unsatisfactory rule of the prior law which permitted the nominal plaintiff in the action to receive the entire proceeds of the litigation, even though such person had only a fractional or no interest in such proceeds, without requiring such nominal plaintiff to give any security or to account in any way therefor." It will be observed that the plaintiff is said to hold the proceeds of the suit as a "trustee."

The Pennsylvania Rules of Civil Procedure were authorized by the Act of June 21, 1937, as amended, 17 P.S. § 61. The Act provides that the rules promulgated pursuant thereto "shall neither abridge, enlarge nor modify the substantive rights of any litigant nor the jurisdiction of any of the said courts * *." [4] Relying largely on the statute quoted, the gist of Sharon's position appears to be that the administrator, Borror, is not a real party in interest but at best a kind of next friend or guardian *ad litem*, in short, a kind of very nominal plaintiff, and that although he has a procedural

standing to maintain the suit at bar, the controversy is not between him and Sharon but between Sharon and Miss Curtician's parents, who are the real parties in interest, and that there is no justiciable controversy between citizens of different states in the case at bar within the meaning of Section 1332, Title 28 U.S.C. But the use of such a term as "nominal" can lead to much difficulty because Rule 2201 defines the "personal representative" as meaning an executor or administrator of the estate of a decedent and that personal representative is undoubtedly qualified by law to bring such an action as that at bar within the Commonwealth of Pennsylvania. He is the master of the litigation. Once he has started it he is compelled to account for his conduct and may be removed for good cause shown. He may oppose his own removal since it is required that he be given notice of any attempt to remove him. See Rule 2203(b) quoted above. He prosecutes the action for named beneficiaries. He holds the proceeds of the suit in trust for them. He is the one who under the law must mark the action discontinued in case of settlement. His status is not that of a mere guardian *ad litem* or a next friend for he has many of the attributes of a true trustee, one who, while having legal title to property and choses in action, deals with them for the benefit of his *cestuis que trustents*.

■ The purpose of the Pennsylvania Rules of Procedure quoted above seems to be plain, *viz.*, the administrator of the estate of the deceased individual, a statutory officer who is active in collecting the assets and satisfying the obligations of the estate, was deemed to be a person who when brought into legal being could also aptly interest himself in pursuing a cause of action for wrongful death for the benefit of those entitled thereto who frequently might be the beneficiaries of the estate

---

4. The courts referred to were the Court of Common Pleas, Quarter Sessions, the County Court in Allegheny County, and the Municipal Court in Philadelphia. The act expressly excludes from its application the Orphan's Court, the tribunals which handle the administration of the estates and the functioning of personal representatives as such.

of the deceased. In our opinion the effect of the Pennsylvania law, though not creating substantive rights, does give a plaintiff such as Borror in a Pennsylvania wrongful death action a procedural standing which is so closely analogous to that of a trustee that he should be treated as if he were one as a matter of law and should be given a substantially similar standing in maintaining a suit such as that at bar. There is a justiciable controversy between Borror, the administrator of Miss Curtician's estate, the plaintiff in the wrongful death suit, and Sharon within the purview of Article III, Section 2 of the Constitution of the United States, and there are adverse interests in litigation subject to adjudication. Coffman v. Breeze Corporations, 323 U.S. 316, 324, 65 S.Ct. 298, 89 L.Ed. 264 (1945); Muskrat v. United States, 219 U.S. 346, 357, 31 S.Ct. 250, 55 L.Ed. 246 (1911). Cf. United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

■ Specifically, however, Borror has been named an "administrator." We think it may not be putting too finely drawn a surmise on the situation presented at bar to suggest that the draftsmen of the Pennsylvania Procedural Rules provided that the representative of the beneficiaries in a wrongful death action could be denominated an "administrator" to the end that Rule 17(a) of the Federal Rules of Civil Procedure might be employed to maintain a suit such as that at bar in a court of the United States. In any event we can see no reason, Sharon's contentions to the contrary notwithstanding, why we should look behind the plain language as well as the implications of the Pennsylvania Procedural Rules to hold that Borror is not such an "administrator" as to lie within the purview of Rule 17(a) of the Federal Rules of Civil Procedure.

We note that the Court of Appeals for the Eighth Circuit in Minnehaha County, S. D. v. Kelley, 150 F.2d 356, 358–359 (1945), construing South Dakota's wrongful death statute, South Dakota Code 37.2203, which required the action to be brought in the name of the executor or administrator of the decedent for the benefit of the surviving spouse, children, or if none for the parents or next of kin, arrived at the conclusion that the administrator could maintain the action and that his citizenship created diversity. But cf. Martineau v. City of St. Paul, 172 F.2d 777 (8 Cir. 1949). Although the South Dakota statute requires that the action be brought in the administrator's or executor's name, the Pennsylvania statutes and rules of practice here applicable, seem otherwise substantially indistinguishable. The Eighth Circuit Court of Appeals cited Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), and Rule 17(a), and treated the term "administrator" as used in the federal rule as the equivalent of an administrator appointed to collect the assets of an estate and satisfy its obligations.

In McCoy v. Blakely, 217 F.2d 227 (8 Cir. 1954), the court pursued substantially the same course in construing a Nebraska statute, Neb.R.R.S. 30–810 (1943). It is true that that statute designated the administrator as the only person who could bring the wrongful death action but it should be observed that the Nebraska statute is similar to the Pennsylvania statutes and rules of practice in that the recovery received from the action goes directly to the beneficiaries and does not become a part of the general estate or subject to creditors' claims.

In Loegering v. County of Todd, 185 F.Supp. 134 (1960), the United States District Court for the District of Minnesota had before it the Minnesota wrongful death statute. Prior to 1951 this act had provided for the bringing of suits by the executor or administrator of the estate. See 37 Minn.Stat.Ann. § 573.02 (1947). The court held that under that statute the executor was the only one who could properly bring the action as plaintiff and "[a]t least to some extent, he was the real party in interest." The court went on to say, "It appears that the Trus-

tee under the amended wrongful death statute, 37 Minn.Stat.Ann. § 573.02 (Supp.1959),[5] occupies a comparable position * * * and that the purpose of the 1951 amendment was mainly to permit the appointment of a representative by the District Court in which the wrongful death action is instituted, and thus to obviate the necessity of requiring the qualification of an administrator or executor in the Probate Court. As the Trustee appointed to bring the wrongful death action, the plaintiff here is in the same category as the special administrator in Minnehaha County v. Kelley, supra [150 F.2d 356]. * * * " The Court of Appeals for the Eighth Circuit held in County of Todd, Minn. v. Loegering, 297 F.2d 470 (1961), that the Minnesota act as amended constituted the plaintiff a "trustee of an express trust * * * " and that the trustee was the real party in interest within the purview of Rule 17(a) and therefore she was entitled to maintain the suit. The fact that the plaintiff was the only one who could bring the suit seems to us to be of no substantial legal significance.

In Grady v. Irvine, 254 F.2d 224, 226 (4 Cir. 1958), a citizen of Maryland sued a citizen of Virginia to recover damages for personal injuries but thereafter died. A citizen of Virginia, the duly appointed administrator, was substituted as plaintiff and the complaint was amended to convert the action into one for wrongful death under §§ 8–628.1, 8–633, and 8–634 of the Code of Virginia, 1950. The statute creates a new right of action and recovery is not for the benefit of the dead person's estate but goes to beneficiaries named in the statute. The Court of Appeals for the Fourth Circuit stated: "It is settled that where a personal representative initially files an action for wrongful death, it is the residence of the representative, not that of his decedent, which is relevant in the resolution, for purposes of federal jurisdiction, of the question of diversity of citizenship", citing Mecom v. Fitzsimmons Drilling Co., supra. The order of the court below dismissing the suit for want of federal jurisdiction was affirmed. This case, of course, represents the obverse side of the coin the face of which we have been examining.

**5.** The statute is as follows: "Subdivision 1. When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 2 may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by such wrongful act or omission. The action may be commenced within three years after the act or omission. The recovery in such action is such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death, shall not exceed $25,000, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death. The court then determines the proportionate pecuniary loss of the persons entitled to the recovery and orders distribution accordingly. Funeral expenses and any demand for the support of the decedent, other than old age assistance, allowed by the court having jurisdiction of the action, are first deducted and paid. "If an action for such injury was commenced by the decedent and not finally determined during his life, it may be continued by the trustee for recovery of such damages for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death. The court on motion shall make an order allowing such continuance and directing pleadings to be made and issues framed as in actions begun under this section.

"Subd. 2. Upon written petition by the surviving spouse or one of the next of kin, the court having jurisdiction of an action falling within the provisions of subdivision 1, shall appoint a suitable and competent person as trustee to commence or continue such action and obtain recovery of damages therein. The trustee, before commencing his duties shall file his consent and oath. Before the trustee shall receive any money, he shall file a bond as security therefor in such form and with such sureties as the court may require.

"Subd. 3. This act shall not apply to any death or cause of action arising prior to its enactment, nor to any action or proceeding now pending in any court of the State of Minnesota. As amended Laws 1951, c. 697, § 1; Laws 1955, c. 407, § 1; Laws 1957, c. 712, § 1."

In Meehan v. Central Railroad of New Jersey, 181 F.Supp. 594, (D.C.N.Y.1960), it was contended that the plaintiff was not the real party in interest but that he was "only a special statutory trustee" and that it was necessary to look to the real parties, the beneficiaries, who were citizens of New Jersey and hence there was no diversity. N.J.S.A. 2A:31–2 provides: "Every action commenced under this chapter shall be brought in the name of an administrator ad prosequendum of the decedent for whose death damages are sought, except where decedent dies testate and his will is probated, in which event the executor named in the will and qualifying, or the administrator with the will annexed, as the case may be, shall bring the action." The United States District Court pointed out that in Meehan, supra, 181 F.Supp. at 603–604, the New Jersey courts have held that "such an administrator *ad prosequendum* 'is but a nominal representative to bring and prosecute the action,'" and "a mere trustee to bring and conduct the action" but nonetheless that the terms "real party in interest" and "nominal party" have been the subject of conflict among the circuits and elected to follow the rule of this circuit stating that "the 'real party in interest' test is not applied to determine diversity but the courts look instead to capacity to bring and maintain the suit", citing, *inter alia*, Mecom v. Fitzsimmons Drilling Co. and Corabi v. Auto Racing, Inc., supra.

The Court of Appeals of the Eighth Circuit has treated the term "administrator" as one of art and as giving a statutory representative standing to maintain suit under Rule 17(a), Fed.R.Civ.Proc., as an "administrator" within the purview of that rule. In the Loegering case, the courts treated the representative bringing the wrongful death action as the trustee of "an express trust."

Though the cases just cited are distinguishable on their precise facts from those of the case at bar, nonetheless they supply a useful analogy and point to the direction in which we think we should go.

For the reasons stated we conclude that Borror has the capacity to sue. Since his citizenship is diverse from that of Sharon's he can maintain the suit at bar under Rule 17(a).

II.

■ The problem, however, may be approached from another and perhaps simpler angle. First, we state that we can perceive no reason why Sharon lays such great emphasis on the fact that the representative who may maintain the wrongful death action is not expressly required by law to do so. No one, whether it be a representative suing in the second six months, or the surviving spouse or a parent or parents suing within the twelve months period, is expressly required by the law of Pennsylvania to maintain any action for wrongful death. We regard this fact as only one of the indicia to be considered in respect to ascertaining Borror's standing on this aspect of the case. It should be pointed out that once the suit has been brought the plaintiff must pursue it or he may be removed for cause. Second, there is a justiciable controversy in the constitutional sense between the representative who brings the suit, here the administrator, and the defendant, Sharon. Third, we think it is clearly demonstrable, Rule 17(a) aside, that Borror has the capacity to maintain the suit under Rule 17(b).

Rule 17(b) provides that the capacity of an individual, other than one acting in a representative capacity, to sue or to be sued shall be determined by the law of his domicile. The rule states how the capacity of a corporation to sue or be sued shall be determined and then provides: "In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held * * *." If the rule be construed literally we must look to the law of the Commonwealth of Pennsylvania. Under that literal construction it cannot be successfully asserted that Borror has not the capacity to sue under the law of Pennsylvania. Rule 2201, Pennsylvania Rules of Civil Procedure, as we have said, de-

fines the personal representative as the "administrator." Rule 2202(b) states that if the action for wrongful death has not been brought within six months after the death of the decedent, it may be brought by the personal representative. Borror has brought the suit as administrator. This, in our opinion, is the end of this phase of the case for in Fallat v. Gouran, supra 220 F.2d at 327, we made plain our ruling that the issue was whether or not the representative had the capacity to sue. Here again, as in Fallat, we do not have to resolve a conflict between state and federal law for under either Borror has the capacity to maintain the suit at bar. It should be noted, moreover, that even under the strictest application of the Conformity Act, 17 Stat. 196, as it was originally conceived to be applicable, the requirements of the law of Pennsylvania have been met. See Fallat, supra 220 F.2d at 328. In so stating we wish to make it plain that we do not in any way alter or change the position taken by us in Fallat, supra 220 F.2d at 327–329. We hold, for the reasons stated, that since Borror has the capacity to sue and since his citizenship is diverse from that of Sharon's, he may maintain the suit at bar.

### III.

We conclude that the jurisdiction of the court below can also be sustained on a theory of pendent jurisdiction. Sharon concedes, as it must, that the court below had jurisdiction of the survival action. See 20 P.S. § 320.601. Rule 213(e) of the Pennsylvania Rules of Civil Procedure 12 P.S.Appendix, provides: "A cause of action for the wrongful death of a decedent and a cause of action for his injuries which survives his death may be enforced in *one* action but if independent actions are commenced they shall be consolidated for trial.

"(1) If independent actions are commenced or are pending in the same court, the court, on its own motion or the motion of any party, shall order the actions consolidated for trial.

"(2) If independent actions are commenced in different courts, the court in which the second action was commenced, on its own motion or the motion of any party, shall order the action transferred to the court in which the first action was commenced.

"(3) If an action is commenced to enforce one cause of action, the court, on its own motion or the motion of any party, may stay the action until an action is commenced to enforce the other cause of action and is consolidated therewith or until the commencement of such second action is barred by the applicable statute of limitation." (Emphasis supplied.)

It is obvious from the foregoing that under Pennsylvania practice a wrongful death action and a survival action may be enforced in a "single action" as that phrase is used in the Pennsylvania rule. The two suits are complementary under the law of Pennsylvania. The plaintiff and the defendant are the same in both causes. The tort relied on is the same in both. The operative facts which give rise to the two suits are identical in each. The wrongful death action may be considered ancillary or pendent to the survival action, or the latter pendent to the former. Such a concept seems clearly within the contemplation of Pennsylvania practice. Such a course saves the time of jurors, of witnesses, of the parties, and of the judges, and prevents tortfeasors from being mulcted of damages.

The complaint states: *"Third:* Jurisdiction * * * is conferred by virtue of diversity of the citizenship of the various parties and further by reason of the fact that the amount in controversy exceeds Ten Thousand * * * Dollars, exclusive of interest and costs."; *"Fourth:* The within action is brought under and by virtue of the Death Acts and Survival Statutes of the Commonwealth of Pennsylvania for and on behalf of George Curtician, father and Kathryn Curtician, mother of the plaintiff's decedent.", and *"Eighth:* The within action

is brought to recover medical and funeral expenses, future loss of earnings and such amounts of money as plaintiff's decedent would in her expected lifetime contribute to those persons entitled to share in the estate of the said minor decedent." The *ad damnum* clause recites: "Wherefore plaintiff brings this action to recover judgment, verdict and costs, all in excess of Ten Thousand \* \* \* Dollars."

It will be noted that the plaintiff in his complaint treats the two causes of action, wrongful death action and survival action, as if they were a single cause of action in strict accordance with the first paragraph of Rule 213(e). He names the two statutes, Wrongful Death and Survival Acts, as if they created one action giving rights arising out of a single state of operative facts, as indeed they do. See paragraphs "Third", "Fourth", and "Eighth", and the *ad damnum* clause, quoted above.

It is clear, of course, that a rule cannot make two causes of action exist where there was only one before or compact two causes of action into one, or indeed create a cause of action. It is manifest also, as we have endeavored to make plain, that the Pennsylvania Rules of Civil Procedure do not create or change substantive rights. See 17 P.S. § 61 quoted above in pertinent part. We make no assertion to the contrary. In respect to the Wrongful Death Act and the Survival Act creating separate causes of action, the law of Pennsylvania appears to be clear. See for example Curtis v. A. Garcia Y Cia, Ltd., 241 F.2d 30 (3 Cir. 1957), and Arny v. Philadelphia Transportation Co., 163 F.Supp. 953 (D.C.Pa.1958), appeal dismissed on the ground that there was no appealable final judgment, 266 F.2d 869 (3 Cir. 1959).

Wrongful death and survival actions are separate actions but nonetheless they are cumulative and not alternative, and the two actions may not overlap or result in a duplication of damages, thereby compelling the tortfeasor to pay more than the maximum damages caused by his negligent act. These principles are so well established as to need but small citation of authority. The trial judge must charge the jury in accordance with these principles as he did in effect here.[6] See Suders v. Campbell, 73 F.Supp. 112 (D.C. Pa.1947), and Stafford v. Roadway Transit Co., 70 F.Supp. 555 (D.C.Pa. 1947), motion refused D.C., 73 F.Supp. 458, affirmed in pertinent part and reversed in part on other grounds, 165 F.2d 920 (3 Cir. 1948). It would appear therefore that a wrongful death action and a survival action, both being statutory creations, and the right to damages thereunder being parts of the whole substantive rights created by the respective statutes, the two statutes together have created a kind of legal hybrid, Siamese twins of the Pennsylvania law, joined together by the nexus of damages. In this respect a recovery under one statute in effect sets up the equivalent of what may justly be termed a compulsory counterclaim of the kind recognized under Rule 13(a) of the Federal Rules of Civil Procedure, in respect to recovery under the other statute, when both the wrongful death action and the survival action are brought in a single suit in a United States court. True, the case at bar is not like Hurn v. Oursler, 289 U.S. 238,

---

6. The trial judge stated at the beginning of his charge: "Members of the jury, it is now your responsibility to decide from the evidence in this case whether the plaintiff is entitled to compensation from the defendant for damages alleged to have been sustained and if so how much.", and "[T]he plaintiff in this case is the administrator of the estate of Bonita Ann Curtician. He is bringing this suit on behalf of her parents and also in behalf of her estate.

"If you find that the administrator is entitled to recover in the case, you will divide your total verdict into two parts; one part you will award to the parents of Bonita Ann Curtician and the other part you will award to the estate."

Again and again throughout the charge and indeed throughout the trial the two actions, wrongful death and survival, were treated as if they constituted, as indeed they did, a single lawsuit, the variance between the two suits lying only in the issue of damages.

53 S.Ct. 586, 77 L.Ed. 1148 (1933), where the assertion of a substantial federal cause of action sustained the jurisdiction of the court in respect to a non-federal cause, or like Taussig v. Wellington Fund, Inc., 313 F.2d 472, (3 Cir. 1963), where it was asserted that a federal right derived from the Investment Company Act of 1940, 54 Stat. 789, 15 U.S.C. § 80a–1 et seq., would support a claim of violation of the common law of unfair competition. In Taussig Judge Hastie said, id. 313 F.2d at 475: "Decision on this jurisdictional point is simplified in this case by the fact that the relief sought is the same on both legal grounds. Moreover, this case does not involve the often vexatious question whether the factual basis for federal statutory relief is substantially different from the factual basis of the asserted common-law right or, as the issue is often stated, whether the suit presents a single cause of action. Here, it is clear that essentially the same facts are relevant whatever the liability-creating law may be. The one issue requiring discussion is whether the asserted federal statutory claim is substantial enough to justify the adjudication of the coupled common-law claim. In other words, the debatable matter is whether federal question jurisdiction is established as a basis for ancillary jurisdiction.

"The leading cases on pendent jurisdiction hold that an actual right to relief under some federal statute need not be established to justify adjudication of the merits of a coupled common-law claim. Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195. The common-law claim must be dismissed only if the coupled federal contention is 'plainly unsubstantial either because obviously without merit, or "because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy."'" Compare

Raybould v. Mancini-Fattore Company, 186 F.Supp. 235 (D.C.Mich.1960). Cf. Sobel v. National Fruit Product Co., 213 F.Supp. 564 (D.C.Pa.1962).

We think that both Hurn v. Oursler and Taussig supply a useful analogy in deciding this aspect of the case at bar. True it is that here the survival action is not federal but is based on diversity and to apply the Hurn v. Oursler principle of pendency where diversity of citizenship rather than a federal question is the basis of jurisdiction is an extension, but one which we think is desirable and should be countenanced by law. Therefore, apart from our holdings under "I" and "II" supra, we conclude the jurisdiction of the plaintiff's suit based on the Pennsylvania Wrongful Death Act may be sustained on this ground.

The judgment will be affirmed.