Philip **OLIVIERI**, minor, by Guardian J. Raymond Dietrich

v.

Clifford **ADAMS**.

Alvin H. **FRANKEL**, Guardian of the Estate of Susan Piselli, minor

v.

**LANSDOWNE CONSTRUCTORS, INC.**, et al.

Alvin H. **FRANKEL**, Guardian of the Estate of Anne B. Morrow, minor

v.

John C. **HONDROS**, Administrator of the Estate of Patricia M. Bradley, Dec'd and Rosemarie Bradley.

Civ. A. Nos. 41217, 39045 and 40946.

United States District Court
E. D. Pennsylvania.
Jan. 23, 1968.

Gerald A. Dennehey, Philadelphia, Pa., for plaintiff J. Raymond Dietrich, guardian of Philip Olivieri.

Michael Shekmar, Philadelphia, Pa., for defendant Clifford Adams.

Martin Heller, Philadelphia, Pa., for plaintiff Alvin H. Frankel, Guardian of Estate of Susan Piselli.

Bennett, Bricklin & Saltzburg, Philadelphia, Pa., for defendant Township of Upper Darby.

Francis E. Marshall, Philadelphia, Pa., for defendants Matthew Cooper, Samuel Cooper and Margaret Cooper.

Albert C. Gekoski, Philadelphia, Pa., for defendant Lansdowne Constructors, Inc.

Gary Leedes, Richter, Lord, Cavanaugh, McCarty & Raynes, Jack Feinberg, Philadelphia, Pa., for plaintiff Alvin H. Frankel, Guardian of Estate of Anne B. Morrow.

Edward C. German, LaBrum & Doak, William B. Freilich, Philadelphia, Pa., for defendant John C. Hondros, Administrator.

Before LORD, LUONGO and MASTERSON, District Judges.

## OPINION

LUONGO, District Judge.

The motions before the court arise out of three separate personal injury suits instituted against Pennsylvania defendants on behalf of Pennsylvania minors. In each of the cases a foreign guardian was appointed for the minor, thereby creating the diversity of citizenship upon which this court's jurisdiction is founded.[1] 28 U.S.C. § 1332(a). By the pending motions, the minors' parents, who are also citizens and residents of Pennsylvania and, therefore, lack diversity of citizenship with defendants, seek to join as plaintiffs in these suits, either by amendment under Rule 15 or by intervention under Rule 24(b), and to assert claims for the damages sustained by them as a result of the minors' injuries.

Under Pennsylvania law personal injury to a minor gives rise to two separate and distinct causes of action, one the parent's claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for losses after minority, Dellacasse v. Floyd, 332 Pa. 218, 2 A.2d 860 (1938); In re Mikasinovich, 110 Pa.Super. 252, 168 A. 506 (1933).

Numerous attempts have been made recently by parents to join their claims in personal injury suits instituted in this district by foreign guardians for their minor children and because of conflicting views,[2] a panel of judges was appointed[3] by the court to hear argument (in some instances, re-argument) on the motions in these cases and render a ruling which may establish uniformity of action within the district pending a definitive ruling by the Court of Appeals.

The principal question presented by these motions is whether this court has jurisdiction over the claims of these parents against these defendants. The subsidiary question is whether this court should exercise its discretion to entertain the claims if it has the jurisdiction to do so.

*Jurisdiction.*

The critical question arises because the jurisdiction of the federal courts is limited. Among the nine separately enumerated classes of cases to which "[t]he judicial Power shall extend" are cases "arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their

---

1. This is a sanctioned device for gaining access to the federal courts. Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.. L.R.2d 711 (3d Cir. 1959).

2. Newman v. Freeman, D.C., 262 F.Supp. 106 (1966), Davis, J., McSparran v. Weist, D.C., 270 F.Supp. 421 (1967), Clary, Ch.J.

3. Originally appointed to the panel were Judges Lord, Jr., Luongo, Davis and Masterson. Judge Davis was ill at the time oral argument was scheduled. With his consent, he was relieved of the assignment and the composition of the panel was reduced by the court to the remaining three judges.

Authority" and controversies "between Citizens of different States." U.S.Const. Art. III, § 2. Romero v. International Terminal Operating Co., 358 U.S. 354, 364, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). The former are commonly referred to as federal question cases, the latter as diversity cases.

Since they and the defendants are all citizens of Pennsylvania, the parents concede that this court lacks original jurisdiction over their claims against defendants. They contend, however, that since the guardians' claims for the minors' injuries are already before us, this court has the power to entertain the parents' claims under the doctrine of pendent jurisdiction. The parents urge that the court should exercise its discretion in favor of their claims since to do so would promote convenience of parties and witnesses and avoid needless duplication of effort by the state and the federal courts.

The doctrine of pendent jurisdiction was applied in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933) and, as expanded, was defined thus in United Mine Workers of America v. Gibbs, 383 U.S. 715, at page 725, 86 S.Ct. 1130, at page 1138, 16 L.Ed.2d 218 (1966).

"Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. * * * The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character,

a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." (Emphasis in original. Footnotes and citations omitted.)

■ *Hurn* and *Gibbs*, as well as their forebears and their progeny all require a substantial federal question claim as the basis for the federal court's jurisdiction over a case before the federal court may exercise pendent jurisdiction over non-federal claims of the same plaintiff against the same defendant.[4] The reason for the requirement appears clear enough. Federal questions are for the federal courts to decide. Assuming the existence of such a federal question, in order to avoid piece-meal litigation and to promote convenience and judicial economy, the doctrine of pendent jurisdiction permits (not requires) the federal courts to decide not only the federal question claims but also to adjudicate the state law claims in the same "cause of action" (Hurn) or "case" (Gibbs).

■ The reason underlying the doctrine, the special competence of the federal courts to decide federal questions, simply does not exist in diversity cases in which, under Erie R.R. Co. v. Tompkins,[5] federal courts are required to apply state law. The cases before us, of course, involve no federal question claims, they present only state law claims.

The parents argue that two decisions by the Court of Appeals in this Circuit, Borror v. Sharon Steel Co., 327 F.2d 165 (3d Cir. 1964) and Wilson v. American Chain & Cable Co., 364 F.2d 558 (3d Cir. 1966), have extended the doctrine of pendent jurisdiction to diversity cases and that we are bound by those precedents to apply the doctrine in these cases. We do not think that the holding

4. See also generally Note: "The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts." 62 Columbia Law Review 1018 (1962).

5. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

in either case goes that far, although there are statements in each, especially in *Wilson*, which would seem to support the parents' position.

The holding in *Borror* is that an administrator suing for the estate of a deceased minor under Pennsylvania's Survival Act,[6] has the capacity to sue and is the proper party plaintiff in the claim for the Wrongful Death Act [7] beneficiaries, consequently the administrator's foreign citizenship, not the non-diverse citizenship of the Wrongful Death Act beneficiaries, controls for diversity purposes. Although the issue before it was thus decided, the Court went on to discuss pendent jurisdiction. Acknowledging that *Hurn* required a substantial federal question as the jurisdictional base for application of the doctrine and that it would be an extension to apply it in a diversity case, the Court opined that such extension was "desirable and should be countenanced by law" (Borror, supra, 327 F.2d at 174) and concluded that jurisdiction of the Wrongful Death Act suit could be sustained under the *Hurn* principle of pendency. Even if, as parents contend, that statement was made as an alternative holding rather than as dictum, it is limited to its narrow facts, i. e., a suit instituted by one person empowered by state law to seek redress for multiple claims under Wrongful Death and Survival Acts [8] which are complementary in nature and involve danger of duplication of damages if not tried together. The claims of the parents here are for separate and distinct elements of damage and there is no danger of duplication. Further, under Pennsylvania law, these guardian-plaintiffs lack capacity to sue for the parents or to recover their damages for them. Brough v. Strathmann Supply Co., Inc., 358 F.2d 374 (3d Cir. 1966); Frankel v. Todd, 260 F.Supp. 772 (E.D.Pa.1966).

*Wilson* holds that in a suit by a parent as guardian for his minor child wherein the federal court's jurisdiction is based on the *parent's* diverse citizenship, the court has jurisdiction to dispose also of the parent's own claim for the minor's injury even though the parent's claim, standing alone, cannot satisfy the statutory requirement that the amount in controversy must exceed $10,000. Pendent jurisdiction was used to overcome the amount in controversy deficiency.

The court in *Wilson* recognized that pendent jurisdiction ordinarily involves multiple claims of *one* plaintiff and, although the case before it involved two plaintiffs (the one the parent on behalf of the minor and the other the parent in his own right), since the claims of both arose out of the injury to the minor and were required by Pennsylvania law to be redressed in one suit, there was such a "unity" of the claims as to warrant application of the doctrine.

The "unity of action" which *Wilson* regarded as an acceptable substitute for "one plaintiff" is limited to causes of action accruing to husband and wife or to parent and child from injury to the wife and to the child respectively, arising from the provision of Pennsylvania law requiring that such causes of action "shall be enforced in one action brought by the husband and the wife" and "by the parent or parents and the child" (Rule 2228(a) and (b), Pa.Rules of Civil Procedure, 12 P.S. Appendix).

In *Wilson*, although there were two parties plaintiff, the same person (the parent) served in both roles. In both *Borror* and *Wilson* the one person who acted as plaintiff to advance the separate claims in each of those cases had the capacity to do so under Pennsylvania law, whereas the guardian-plaintiffs here do not. The fact that there were multiple plaintiffs in Newman v. Freeman, 262 F. Supp. 106 (1966), and only one person

---

6. 20 P.S. § 320.601.

7. 12 P.S. § 1601 et seq.

8. Which the Court characterized as "\* \* \* a kind of legal hybrid, Sia-

mese twins of the Pennsylvania law, joined together by the nexus of damages." Borror, supra, 327 F.2d at p. 173.

serving as plaintiff in *Wilson* was deemed as "insignificant distinction" by our learned colleague Judge Davis. We respectfully disagree. We consider the distinction significant. *Wilson* stressed the unity of claims of parent and child stemming from the family relationship and the requirement that the claims be redressed in one suit brought by the parent and the child. In the instant cases the family relationship has been bypassed in favor of the appointment of a guardian. The purpose of the appointment was to confer jurisdiction in this court over the minor's claim; the effect was to destroy the unity of the parent-child claim. That unity cannot now be resurrected by treating the guardian as if he does not exist. To do so would be to countenance an exercise in jurisdictional self levitation. The unity of claims which *Wilson* found to exist between parent and child, simply does not exist between parent and guardian. There is no provision in Pennsylvania law for the compulsory joinder of claims of parent and guardian as there is for claims of parent and child and husband and wife.

Confined to its own facts, *Wilson* permits extension of the pendency doctrine to cases involving multiple plaintiffs with claims arising out of injury to one, provided there is a unity of the claims of such multiple plaintiffs arising out of a close family relationship and the requirement of state law that such claims be redressed in one suit, and provided further that the one of such plaintiffs instituting suit on behalf of all satisfies the *constitutional* requirement of diverse citizenship.

There is dictum in *Wilson* which, without question, can be interpreted as extending the doctrine of pendent jurisdiction to any case which is properly in the federal courts. Addressing itself to a question which it pointed out had not been raised (and presumably had not been briefed or argued) the court, in language which appears to us much broader than required by the facts before

it, discussed pendent jurisdiction and referred to it as a doctrine "by which a claim cognizable in the federal courts may be permitted to carry with it a related claim otherwise not within the federal jurisdiction, if both claims ordinarily would be tried in one judicial proceeding." Id., 364 F.2d at 564. Although seemingly relying on *Gibbs* as authority and although *Gibbs* (and *Hurn* before it) had stressed the necessity of a substantial federal question issue as a prerequisite to the application of the doctrine of pendent jurisdiction, *Wilson's* dictum would eliminate entirely the severely limiting federal question requirement and extend the doctrine to "[any] claim cognizable in the federal courts." The implications of this definition and the potential reach of pendent jurisdiction under it are breathtaking. The only limitations on the doctrine would be the federal courts' discretion and the requirement that the claims be "related" in some way and such as "ordinarily would be tried in one judicial proceeding." This language can fairly be interpreted to extend the jurisdiction of the federal courts, for example, to encompass the claims of all persons injured in a common accident if there is diversity of citizenship and jurisdictional amount as between defendant and just one of the injured persons. It could be said that the claims of all the injured persons are "related" [9] in that they all arise out of the one occurrence. We do not believe that the *Wilson* court intended so drastic an assault upon the constitutional limitation on the federal courts' jurisdiction.

■ In our view, the Court of Appeals' ruling in *Borror* and *Wilson* are not binding on the precise issue before us and we hold that, in a suit on behalf of a minor wherein our jurisdiction is based on the foreign citizenship of the minor's *guardian,* we do not have pendent jurisdiction over the claim of the minor's *parent* whose citizenship is not diverse from that of the defendant.

---

9. Of course we recognize that the *facts* of *Wilson* severely restrict the meaning of "related", but the quoted definition does not.

What we have said thus far is addressed to the basic question of our jurisdiction and applies equally to the motions to amend under Rule 15 and to intervene under Rule 24(b). The intervention argument requires a special comment because of the reliance of the parents on Berman v. Herrick, D.C., 30 F.R.D. 9 (1962), decided by the writer of this opinion, wherein it was held that this court had jurisdiction to permit intervention in a pending diversity suit notwithstanding that the intervenors lacked diversity and their claims were for less than the jurisdictional amount. It was there stated that permitting the intervention did not violate the mandate of Rule 82 that the "Rules shall not be construed to extend * * * the jurisdiction of the United States district courts * * *." The view expressed in Berman v. Herrick was in disagreement with the position taken by Professor Moore in his treaties on federal practice [10] and was criticized in 48 Iowa Law Review 530 (1963). We believe Berman v. Herrick was wrongly decided and we decline to follow it.

*Discretion.*

Alternatively, if it be ruled on appeal that we do have the power to entertain the parents' claims under the doctrine of pendent jurisdiction, then, in the exercise of our discretion [11] we decline to do so. We recognize the convenience to parties and witnesses and the saving in time and effort for the courts if all the claims can be redressed in one suit. That result can be obtained as a matter of right in the state courts. We are not persuaded that we should exercise our discretion to entertain the parents' claims in order to accomplish a result which is already available, as a matter of right, in the state courts. In view of the crowded condition of this court's docket, we are not favorably disposed to encourage an increase here of state law claims on "artificial" diversity grounds. See McSparran v. Weist, D.C., 270 F. Supp. 421, 422 (1967). Until very recently it was generally understood that the claims of non-diverse parents could not be brought in this court even if, by the device of the appointment of a foreign guardian, their minor's claim could. We have no way of knowing how many minors' suits which might have been brought in this court by the use of that device, were filed instead by parents in the state courts to avoid the inconvenience of filing and prosecuting two suits. We suspect that the number is large. We have no desire to open potential floodgates of additional state claim litigation in this court. Cf. Obney v. Schmalzreid, 273 F.Supp. 373 (W.D.Pa. 1967).

The motions to amend and the motions to intervene will be denied.

---

**10.** 4 Moore's Federal Practice ¶ 24.18, at page 137:
"Intervention in an *in personam* action under a discretionary right must be supported by independent grounds of jurisdiction; except when the action is a class action."

**11.** United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966):

"That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; * * *."