**J.M. RESOURCES INCORPORATED,**
**Plaintiff,**

v.

**PETRO–PAK RESOURCES, LTD., and Petro-Pak Corporation, Defendants.**

**Civ. A. No. 83–K–1430.**

United States District Court,
D. Colorado.

March 7, 1984.

Robert E. Warren, Jr., and Mark E. Haynes, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for plaintiff.

Jeffrey L. Smith and Susan J. Trout, Cohen, Brame & Smith, Denver, Colo., for defendants.

## ORDER GRANTING MOTION TO DISMISS

KANE, District Judge.

The issue I must decide here is both novel and narrow: in a fraudulent conveyance action, in which the transferee of money is properly before the court on the basis of diversity jurisdiction, does the court have jurisdiction over a money claim against the transferor if that transferor is from the same state as the plaintiff?

Plaintiff J.M. Resources Incorporated (J.M.), a Colorado corporation, filed this action on August 9, 1983, against defendant Petro-Pak Resources, Ltd., a British Columbia Corporation (Petro-Pak), alleging fraudulent conveyance, breach of fiduciary duty, liability for the debts of a subsidiary

and unjust enrichment. Jurisdiction was based on alienage. 28 U.S.C. § 1332(a)(2).[1]

Petro-Pak is engaged in the oil and gas business. It conducts its American operations through a wholly-owned subsidiary, Petro-Pak Colorado, a Colorado corporation. Petro-Pak Colorado entered into certain operating agreements pertaining to oil and gas properties located in Kansas and Montana with J.M. in July 1981 and July 1982. Petro-Pak Colorado became insolvent and was unable to meet its financial commitments under the operating agreements. J.M. alleges that Petro-Pak has been transferring the assets of Petro-Pak Colorado to Petro-Pak itself.

Believing that Colorado law requires a liquidation of the claim against the transferor in order to establish the liability of the transferee of a fraudulent conveyance, J.M. joined a claim for money against Petro-Pak Colorado to its fraudulent conveyance claim against Petro-Pak. Pursuant to F.R.Civ.P. 12, the defendant Petro-Pak has moved to dismiss this action for lack of subject-matter jurisdiction. It argues that because Petro-Pak Colorado and J.M. are both Colorado corporations, complete diversity of citizenship, *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806), is lacking.

The plaintiff, however, believes that the doctrine of ancillary jurisdiction enables this court to adjudicate J.M.'s claim against Petro-Pak Colorado. I disagree.

Rather than using the doctrine of ancillary jurisdiction, the proper analysis[2] should therefore be in terms of pendent jurisdiction, more particularly pendent party jurisdiction.

■ A pendent claim is asserted by a plaintiff who seeks to have a federal court hear a state claim (the pendent claim) which shares a "common nucleus of operative fact" with the federal claim.[3] *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The federal claim is not one based on diversity because if it were, the diversity of the only two litigants involved would itself support federal jurisdiction to hear any state claim.

■ In the pendent party situation, there is not only a state claim which is appended to the action that provides the anchoring source of federal jurisdiction, but there is also an ancillary party. Under this theory, a diversity anchor is possible, the pendent party theory being used to overcome the absence of complete diversity that would arise from the addition of a nondiverse party. *See Ayala v. United States*, 550 F.2d 1196, 1198 (9th Cir.1977).

A few courts have relied on the concept of pendent parties to entertain suits in which diversity was not complete.[4] *See*,

---

1. 28 U.S.C. § 1332(a)(1) confers upon federal courts jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $10,000 ... and is between ... citizens of different States." 28 U.S.C. § 1332(a)(2) confers jurisdiction when one party is a citizen of or a subject of a foreign country.

2. Ancillary jurisdiction is an ill-defined concept. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3523 at 56 (1975). But if any distinction between ancillary and pendent jurisdiction can be made, it is that ancillary claims are usually asserted after the complaint is filed by one other than the plaintiff, while pendent claims are asserted by plaintiffs in their complaint. *Corporacion Venezolana de Fomento v. Vintero Sales*, 477 F.Supp. 615, 622 n. 13 (S.D.N.Y.1979); 1 Fed.Proc., L.Ed. § 1:19 (1981); Comment, *Aldinger v. Howard and Pendent Jurisdiction*, 77 Colum.L.Rev. 127

(1977). J.M. is attempting to join two claims against two different parties.

3. The first requirement for pendent jurisdiction is proof of a "common nucleus of operative fact." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). I will assume *arguendo*, that the facts of this case meet that standard. I express no opinion on this. The underlying debt and the allegedly fraudulent transfer arose out of different transactions or occurrences since they took place at different times. The evidence and issues relating to each could thus be very different, thereby nullifying litigation efficiency.

4. Other courts have relied on the notion to avoid the amount-in-controversy requirement and the federal question requirement. The considerations involved in these cases are different. See 13 C. Wright, A. Miller & E. Cooper, *Federal*

*e.g., Borror v. Sharon Steel Co.,* 327 F.2d 165 (3d Cir.1964); *Wittersheim v. General Transp. Services, Inc.,* 378 F.Supp. 762 (D.C.Va.1974). These cases, however, have not been well received. *Borror,* which involved a survival claim, was restricted to its particular facts in *Seyler v. Steuben Motors, Inc.,* 462 F.2d 181 (3d Cir.1972), and *Wittersheim* was expressly disapproved by the Fourth Circuit in *Parker v. W.M. Moore & Sons,* 528 F.2d 764 (4th Cir.1975). *See also Grimandi v. Beech Aircraft Corp.,* 512 F.Supp. 764 (D.C.Kan. 1981); *Burnside v. Sanders Assn., Inc.,* 507 F.Supp. 165 (D.C.Tex.), *aff'd,* 643 F.2d 389 (5th Cir.1981); *Wolgin v. Atlas United Financial Corp.,* 397 F.Supp. 1003 (D.C. Pa.1975); *Sherrell v. Mitchell Aero, Inc.,* 340 F.Supp. 219 (D.C.Wis.1971). *See generally* Bratton, *Pendent Jurisdiction in Diversity cases—Some Doubts,* 11 San Diego L.Rev. 296 (1974).

The Supreme Court has not directly addressed the issue of whether a plaintiff in a diversity case can join a nondiverse defendant on a state claim. But two cases, when read together, leave little room for speculation as to what it would conclude if it were to hear the matter.

In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the court held that in a civil rights action under 42 U.S.C. § 1983—and its jurisdictional counterpart, 28 U.S.C. § 1343—against county officers, the county itself, which was not then considered a "person" under the civil rights statutes, could not be joined as a "pendent party" against which to assert a state-created claim arising out of the same facts that gave rise to the claim against the officers. The issue framed by the court was "whether the doctrine of pendent juris-

diction extends to confer jurisdiction over a party as to whom no independent basis of jurisdiction exists." 427 U.S. at 2–3, 96 S.Ct. at 2414–2415. Without making "any sweeping pronouncement" about the existence of pendent party jurisdiction, the court stated that "[b]efore it can be concluded that [pendent party] jurisdiction exists, a federal court must satisfy itself not only that Article III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." 427 U.S. at 18, 96 S.Ct. at 2422.

Applying this test, the Supreme Court, in *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) refused to allow a plaintiff to sue a nondiverse third-party defendant in federal court on an ancillary jurisdiction theory.[5] In *Owen* an Iowa citizen brought suit against a Nebraska corporation. That corporation filed a third-party complaint against another corporation. The original plaintiff was then allowed to amend her complaint to name the additional company as a defendant. She alleged that it was a Nebraska corporation. At trial it was disclosed that the defendant was an Iowa corporation, and therefore a citizen of that state for purposes of diversity. The second company moved to dismiss the action. The court, applying the *Aldinger* test,[6] held that Congress had implicitly denied the existence of pendent party jurisdiction in cases where the anchoring federal claim was based solely on diversity of citizenship. It reasoned that the complete diversity requirement had been in existence for 150 years, and that Congress had altered the jurisdictional statutes many times since then without altering the complete diversi-

*Practice and Procedure: Jurisdiction* § 3567 at 457–62 (1975). Recent Supreme Court cases have denied the use of this doctrine to evade the jurisdictional amount, *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), and have severely restricted its use as a means of joining a second party in an action based on a federal claim, *see Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

**5.** Although *Owen* is in terms a decision on ancillary jurisdiction, its reasoning applies to pendent party jurisdiction. *Cf. Fawvor v. Texaco, Inc.,* 546 F.2d 636 (5th Cir.1977) (discussing an identical situation in terms of pendent party jurisdiction).

**6.** The requirement of complete diversity is not constitutionally mandated. *State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203–04, 18 L.Ed.2d 270 (1967).

ty requirement. 437 U.S. at 373–74, 98 S.Ct. at 2402–03.

The court also advanced two reasons for holding that the exercise of ancillary jurisdiction over this defendant was improper while admitting that ancillary jurisdiction over third-party defendants is usually permissible. First, the resolution of a third-party complaint depends at least in part on the decision in the primary lawsuit. "Its relation to the original complaint is thus not mere factual similarity but logical dependence." 437 U.S. at 376, 98 S.Ct. at 2404. And second, the court observed that the plaintiff had chosen the forum:

> A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations. "The efficiency plaintiff seeks so avidly is available without question in the state courts." *Kenrose Mfg. Co. v. Fred Whitaker Co.,* 512 F.2d 890, 894 (CA 4 [1975]).

437 U.S. at 376, 98 S.Ct. at 2404.

The reasoning in *Owen* applies with even more force here. First, the claim for money against Petro-Pak Colorado is not logically dependent upon the fraudulent conveyance claim against Petro-Pak Resources. On the contrary, both parties concede the reverse, namely that the fraudulent conveyance claim is dependent upon the liquidation of the claim against Petro-Pak Colorado under state law. *Cf. Gus T. Handge & Son Painting v. Douglass State Bank,* 543 F.Supp. 374, 379 (D.Kan.1982) (ancillary jurisdiction not supportable in part because state law claim was arguably dependent on resolution of another lawsuit pending in state court rather than on primary lawsuit in federal court). Second, in the *Owen* case, the nondiverse defendant was originally brought into the case as a third-party defendant. Petro-Pak Colorado, on the other hand, was consciously brought into the case by the plaintiff itself.

This violates the requirement of complete diversity even more surely than the situation in *Owen* did:

> Thus it is clear that the respondent [plaintiff] could not originally have brought suit in federal court naming Owen and OPPD as codefendants, since citizens of Iowa would have been on both sides of the litigation. Yet the identical lawsuit resulted when she amended her complaint. Complete diversity was destroyed just as surely as if she had sued Owen initially. In either situation, in the plain language of the statute, the 'matter in controversy' could not be 'between . . . citizens of different States.'

437 U.S. at 374, 98 S.Ct. at 2403.

The Tenth Circuit applied *Aldinger* and *Owen* strictly against the exercise of jurisdiction in *National Ins. Underwriters v. Piper Aircraft,* 595 F.2d 546 (10th Cir. 1979). In that case, plaintiff National Insurance Underwriters asserted seven alternative claims for relief in its complaint. Jurisdiction was based on diversity of citizenship. Several of the claims of the plaintiff were for less than the jurisdictional minimum of $10,000. The court held that *"[j]ust as congressional intent would be circumvented by allowing a plaintiff to bring suit against a non-diverse impleaded defendant,* the intent is circumvented by allowing a plaintiff to bring one diversity claim in excess of the minimum amount and join several other defendants by asserting $7,000 claims." 595 F.2d at 550 (emphasis added).

*Owen* and *Aldinger* compel me to refuse jurisdiction over this case.[7] J.M., however, argues that F.R.Civ.P. 18(b) provides an exception to the result dictated by those cases. F.R.Civ.P. 18(b) permits a party to join two claims even though if they were asserted independently it would be necessary to prosecute one of them successfully before proceeding to the adjudication of the other. In particular, "a plaintiff may state a claim for money and a claim to have set

---

7. *See also Birmingham Fire Ins. v. Winegardner and Hammons,* 714 F.2d 548, 552–54 (5th Cir. 1983) (reading *Owen* and *Aldinger* as grounds for refusing to interpret the ancillary jurisdiction doctrine in such a way as to defeat the diversity requirement).

aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money." F.R. Civ.P. 18(b).

■ There is no consensus about the propriety of asserting jurisdiction when a plaintiff comes into federal court alleging diversity of citizenship, but the two claims joined under Rule 18(b) involve one diverse party and one nondiverse party.[8] The issue has only arisen in the context of a debtor from a different state and a transferee from the same state as the plaintiff.[9] One case, decided before the promulgation of the Federal Rules, held that the doctrine of ancillary jurisdiction enabled the court to hear the claim against the transferee. *Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.*, 20 F.2d 295 (2d Cir. 1927). This was a suit for profits gained from infringement of a patent. On the same day that a final decree was entered against the original defendant, the plaintiff filed a supplemental bill against a nondiverse defendant seeking to set aside a fraudulent conveyance to it by the original defendant. Judge Learned Hand, writing for the Second Circuit, thought that the supplemental bill was within the court's ancillary jurisdiction. His reasoning, however, is inapposite to the present case. Under New York law, a fraudulent conveyance is void. Therefore the creditor, in theory, still owned the property. Thus the suit to set aside the fraudulent conveyance was "in substance an equitable execution." *Id.* at 297. In the present case, by contrast, the suit against the nondiverse party, the transferor, is much more important: indeed it is an essential condition to the suit

against Petro-Pak Resources, the diverse party.

A more recent case endorsed the use of ancillary jurisdiction in the context of a third-party claim. In *Super Value Stores, Inc. v. Parker's Food Town, Inc.*, 525 F.Supp. 730 (N.D.Ga.1981), the district court exercised jurisdiction over a third-party plaintiff's claim against third-party defendants, and then held that it had ancillary jurisdiction over the third-party plaintiff's claims against proposed nondiverse additional third-party defendants who were transferees pursuant to the alleged fraudulent conveyance. This case is distinguishable in that a third-party plaintiff, unlike the plaintiff contemplated in *Owen*, does not choose his forum. In addition, the opinion is not persuasive. It relies on two cases, *Empire Lighting, supra*, and *Armour & Co. of Delaware v. B.F. Bailey*, 132 F.2d 386 (5th Cir.1942). *Empire Lighting* is of little precedential value. The *Armour* case did not involve the question of whether jurisdiction existed over the contingent claim. The court merely discussed the effect of Rule 18(b) on the joinder of fraudulent conveyance claims:

> Prior to the adoption of the rules of civil procedure, a creditor could not maintain an action to set aside a fraudulent conveyance in the federal court until he had reduced his claim to judgment. This was abrogated by Rule 18(b) ... [which] [b]y its express terms ... contemplates a joiner of the action to set aside the conveyance with the action to establish the claim, the former being ancillary to and dependent upon the latter, and the debtor an indispensable party.

(Citations omitted). 132 F.2d at 387.[10] This dictum does not even relate to the

---

**8.** No problem arises if a federal question forms the jurisdictional basis for each claim and each claim satisfies the requisite jurisdictional amount.

**9.** The case at hand involves a debtor from the same state and a transferee from a different state.

**10.** *Landers, Frary & Clark v. Vischer Products Co.*, 201 F.2d 319 (7th Cir.1953), also cited by the parties, also discussed Rule 18(b). In this

case there was complete diversity between the parties anyway. *See Landers, Frary & Clark v. Vischer Products Co.*, 104 F.Supp. 411 (N.D.Ill. 1952). In *Huntress v. Huntress' Estate*, 235 F.2d 205 (7th Cir.1956) and *A.E. Borden v. Wurm*, 174 F.Supp. 606 (D.Me.1959), nondiverse transferees were present, and the courts did take jurisdiction over the cases. However, they did so not on the basis of ancillary jurisdiction theories, but because of 28 U.S.C. § 1655, which dealt with the enforcement of liens against property found within a district.

issue of jurisdiction. If it did, it would be of questionable validity because Rule 82 expressly provides that the Federal Rules cannot extend or limit the subject-matter jurisdiction of the federal courts.[11]

These cases do not convince me to exercise ancillary jurisdiction over a nondiverse transferee. They certainly do not require me to exercise ancillary jurisdiction over a nondiverse debtor, the claim against whom is a prerequisite to, rather than dependent upon, the claim against the transferee. I therefore choose to follow the mandate of the *Owen* and *Aldinger* cases and to dismiss this case.

Order accordingly.

---

11. *See also Thomas v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942) (the rationale behind the diversity statute requires its strict construction).