The SCOTTS COMPANY,
et al., Plaintiffs,

v.

RHÔNE–POULENC S.A.,
et al., Defendants.

No. 2:04–CV–0352.

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 7, 2004.

David Stewart Cupps, Gerald Paul Ferguson, Vorys, Sater, Seymour & Pease, Columbus, OH, for Plaintiff.

Richard A Frye, Sarah Daggett Morrison, Gerhardt A. Gosnell, II, Chester, Willcox & Saxbe, Columbus, OH, for Defendant.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Plaintiffs, the Scotts Company and a number of entities related to the Scotts Company, filed this action in the Union County Court of Common Pleas against five defendants. Four of these defendants, Rhône–Poulenc S.A., Rhône–Poulenc Agro S.A., Hoechst A.G., and Aventis, S.A., are either French or German corporations. The fifth defendant, StarLink Logistics, Inc., is a Delaware corporation with a principal place of business in North Carolina. All defendants removed the case to this Court on the basis of diversity of citizenship.

Scotts, although it had named StarLink as a defendant and asserted certain claims against StarLink, moved to remand, contending that StarLink is only a nominal defendant and that if its citizenship is disregarded, removal of the case was improper. A Response, reply, surreply and response to the surreply have been filed. For the following reasons, the motion to remand will be denied.

### I.

Because the issue raised by the motion to remand is jurisdictional, the underlying facts of the parties' dispute need be recited only briefly. According to the complaint, they consist of the following allegations.

Scotts entered into a $200 million transaction in October of 1998 through which it acquired certain business entities and opportunities in Europe. It claims that, shortly after the transaction, the parties from which it acquired those entities and opportunities (which companies, or their successors, are named as defendants in this action) began undermining the value of the transaction. Scotts and certain European companies engaged in arbitration proceedings and Scotts received an arbitration award. However, it asserts that the award did not fully compensate it for its damages, and it has sought additional damages in this litigation based on various legal theories.

As part of the initial transaction, Scotts asserts that it obtained the right to acquire a company known as TechPac LLC. Rather than being permitted to do so, however, Scotts contends that the defendants transferred TechPac to defendant StarLink Logistics, a corporation under their control. Scotts seeks, among other relief in this action, to have StarLink divest itself of TechPac so that Scotts may acquire it. Scotts also alleges, however, that StarLink, together with defendant Aventis, caused tortious injury to Scotts in Ohio by interfering with its legally-protected right to acquire TechPac. Complaint, ¶ 94. It has asserted a claim against StarLink not only for restitution or equitable relief and an injunction, but for money damages based upon tortious interference with contract. Complaint, Counts Three and Four.

Because the jurisdictional issue presented hinges in part upon the citizenship of the parties, it is also important to describe that citizenship in some detail. There are six plaintiffs identified in the complaint. The first-named plaintiff, the Scotts Company, is an Ohio corporation with its principal place of business in Ohio. The other five plaintiffs, all wholly-owned subsidiaries of the Scotts Company, are citizens of either Germany, France, or Belgium. Rhône–Poulenc, S.A., Rhône–Poulenc Agro S.A. and Aventis S.A., three of the five defendants, are also French corporations. Hoechst A.G. is a German corporation and StarLink, as noted above, is a Delaware

Corporation with a principal place of business in North Carolina. Scotts appears to concede, as will be more fully discussed below, that given this alignment of the parties, removal would ordinarily be proper. However, it contends that StarLink's citizenship should be ignored for jurisdictional purposes. If that occurred, according to Scotts, removal would have been improper. These contentions are more fully addressed in the following section of this Memorandum and Order.

## II.

■ Defendants removed the case to this Court under 28 U.S.C. § 1441, which provides that any civil action brought in a state court may be removed if it is an action over which a United States District Court has original jurisdiction. In this case, according to defendants, the District Court would have had original jurisdiction over the case pursuant to 28 U.S.C. § 1332(a)(3) had it been filed in the District Court. That jurisdictional provision states that a District Court has original jurisdiction of a civil action involving a claim the value of which exceeds the sum or value of $75,000 so long as it is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties...." Although it is not completely free from doubt, this statutory provision has been interpreted to permit the District Courts to disregard the citizenship of any foreign plaintiffs or defendants, for diversity purposes, so long as there is at least one citizen of a state of the United States on each side of the case and there is complete diversity between those United States citizens. *See, e.g., Tango Music, L.L.C. v. DeadQuick Music,* 348 F.3d 244 (7th Cir.2003); *Clark v. Yellow Freight System,* 715 F.Supp. 1377 (E.D.Mich.1989); *cf. Allendale Mutual Insurance Co. v. Bull Data Systems,* 10 F.3d 425 (7th Cir.1993). Under these

decisions, the citizenship of the foreign plaintiffs and defendants is completely disregarded even if there is not complete diversity among the foreign citizens, as is the case here. Consequently, the Court will assume, as do the parties, that if StarLink is not a nominal defendant and its citizenship is significant for diversity of citizenship purposes, the Court has diversity jurisdiction over this case and removal was proper.

This case is in somewhat of an unusual procedural posture. Ordinarily, when a court is asked to disregard a party's citizenship for purposes of determining whether removal is proper, it is the defendant which asks the court to determine that the plaintiff has "fraudulently joined" a non-diverse defendant in order to defeat removal jurisdiction. *See, e.g., Rose v. Giamatti,* 721 F.Supp. 906 (S.D.Ohio 1989). In that situation, the plaintiff then defends its choice of defendants, asserting that the defendant whose citizenship is sought to be disregarded is an actual defendant against which a real claim for relief has been asserted. Here, however, plaintiffs joined a *diverse* defendant whose citizenship appears to create diversity jurisdiction, but argue that they have not really asserted a claim against that defendant which counts for jurisdictional purposes. Thus, they are in a somewhat unique position of arguing that they have "fraudulently joined" a defendant whose citizenship, if disregarded, prevents the case from being removed. For the following reasons, the Court finds this argument unavailing.

■ In arguing that StarLink is only a nominal party, plaintiffs first assert that StarLink was joined only for the purposes of obtaining its disgorgement of TechPac, and that as a transferee of property wrongfully conveyed, it is, in essence, a "relief defendant" against whom a "real"

claim for damages has not been asserted. Defendants argue, however, that the very language of the complaint filed by plaintiffs belies that assertion. Although the Court agrees with defendants on this point, there is a second reason why the claims against StarLink, even if they are deemed to be purely claims for equitable relief based upon an improper transfer of TechPac, cannot be ignored for purposes of determining whether diversity jurisdiction exists.

■ Plaintiff's argument assumes, without citing any supporting case law, that a party joined only for purposes of obtaining some type of disgorgement order is not a "real" party for diversity purposes. However, most courts which have directly or tangentially addressed similar issues have concluded that a transferee of an allegedly fraudulent conveyance is a party whose citizenship matters, and that the court may not simply disregard that citizenship in determining whether jurisdiction exists.

Those courts which have addressed this issue have struggled with the opposite question from the one presented here: namely, whether the court can exercise jurisdiction over a case in which both the plaintiff and the alleged transferee share the same citizenship. Obviously, in such a case, if the citizenship of the transferee of the fraudulent conveyance is important for diversity purposes, diversity jurisdiction would not exist.

Generally, the courts faced with this question have avoided a jurisdictional dismissal by concluding not that the citizenship of the transferee is unimportant, but that the court has supplemental or ancillary jurisdiction over the claim to recover the fraudulently transferred assets, such as jurisdiction arising out of the court's inherent ability to enforce its own judgments. When that type of conclusion has not been possible because, for example,

there has not been a prior judgment determining that the asset in question has been fraudulently conveyed, the courts have generally concluded that no ancillary or supplemental jurisdiction exists and have dismissed the case for lack of jurisdiction. *See, e.g., Klass Report v. Telémation, Inc.,* No. 98 CIV. 9181, 2000 WL 1871741 (S.D.N.Y. Dec. 21, 2000); *Atlantic Purchasers v. Aircraft Sales,* 101 F.R.D. 779 (W.D.N.C.1984); *J.M. Resources v. Petro–Pak Resources,* 581 F.Supp. 629 (D.Colo. 1984); *Super Value Stores v. Parker Food Town, Inc.,* 525 F.Supp. 730 (N.D.Ga. 1981). Consequently, this Court concludes that even if StarLink has been made a party only because it allegedly received TechPac as a form of fraudulent conveyance made in violation of the agreement between Scotts and other defendants, such status does not make it a "nominal" party whose citizenship can be disregarded for diversity purposes.

■ However, as defendants also correctly point out, the complaint does not support plaintiffs' interpretation of the type of relief being sought against StarLink. Although StarLink is named in Count Three of the complaint as a transferee of TechPac and equitable relief is sought against it in that count, in Count Four, plaintiffs allege that StarLink combined with Aventis to interfere tortiously with plaintiffs' contractual right to acquire TechPac. Tortious interference with a contract is a claim recognized under Ohio law. As this Court noted in *Rose v. Giamatti, supra,* if there is a "possibility that the plaintiff can establish a valid cause of action under state law against the [defendant]," the defendant is properly joined and its citizenship is considered for diversity purposes. *Id.* at 914, citing *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). Plaintiffs do not seriously argue that there is no possibility that they

could recover against StarLink on their claim for tortious interference with a contract, and, in any event, the Court is constrained to consider only the pleadings in this regard. The pleadings appear to state a valid cause of action against StarLink under Ohio law for tortious interference with contract. Thus, its citizenship must be considered along with that of the other defendants in determining whether diversity jurisdiction exists.

In their reply memorandum, plaintiffs raise, for the first time, a secondary argument concerning jurisdiction. They contend that although the citizenship of a subsidiary corporation is usually regarded as significant for diversity jurisdiction purposes, that citizenship can be disregarded under certain circumstances. Thus, if the subsidiary is merely an alter ego of the parent corporation, its citizenship may be ignored for purposes of determining whether diversity jurisdiction exists. *See Schwartz v. Electronic Data Systems*, 913 F.2d 279 (6th Cir.1990). Plaintiffs argue that StarLink is such an alter ego of its parent, Aventis, and that for this additional reason the Court should conclude that diversity jurisdiction is lacking.

At the outset, it is not clear what facts plaintiffs believe support the assertion that StarLink is an alter ego of Aventis. As defendants point out, the complaint alleges that StarLink is a separate corporation with its state of incorporation and principal place of business different from Aventis. There are no "alter ego" allegations in the complaint itself. Defendants also cite to the record in Case No. 2:02–cv–786 in which a Rule 30(b)(6) deposition of Raymond Salerno was filed. Mr. Salerno testified, in response to a question asking whether StarLink was a "shell," that Star-Link was formed not only in order to have an interest in TechPac but to manage certain litigation filed against Aventis and to manage the remediation of sites owned by Aventis which required environmental remediation. Finally, defendants argue that the *Schwartz* case actually rejects the proposition, accepted by some other courts, that an alter ego theory can be used to disregard the citizenship of a subsidiary corporation, and that even if the argument is accepted, StarLink would still be deemed to be a citizen of the state in which it is incorporated so that diversity jurisdiction would be preserved.

In *Schwartz*, a former EDS employee who was a Michigan resident filed suit against EDS, a Texas corporation. EDS was, at that time, a wholly-owned subsidiary of General Motors, which is a citizen of Michigan for diversity purposes. If EDS's citizenship were disregarded and the citizenship of General Motors were imputed to it, diversity jurisdiction would have been lacking.

In addressing this issue, the Court of Appeals first stated the applicable general principle as follows:

"When formal separation is maintained between a corporate parent and its corporate subsidiary, federal court jurisdiction over the subsidiary is determined by that corporation's citizenship, not the citizenship of the parent."

*Schwartz*, 913 F.2d at 283. The Court noted that the general rule "applies even where the parent owns all the stock of the subsidiary and exercises close control over its operations." *Id.* The Court of Appeals concluded that other courts had not rejected this general rule, but, in cases where they had disregarded the citizenship of the subsidiary, they had concluded "on the basis of particular facts that a subsidiary's principal place of business was the same as that of the corporate parent" or "that the subsidiaries were not actually separate corporate entities...." *Id.* at 283–84 (citations omitted).

Following *Schwartz*, the Court must apply the general rule that the citizenship of StarLink does, indeed, count for diversity jurisdiction purposes unless, on the basis of some set of "particular facts" the Court could conclude that its principal place of business is the same as its corporate parent, or could conclude that it is not actually a separate corporate entity. There is no evidence concerning the latter factor which would allow the Court to conclude that corporate formalities had not been observed when StarLink was formed. With respect to the former factor, there is no factual basis from which the Court could find that StarLink's principal place of business is the same as its corporate parent, Aventis. Even if that were the case, however, as defendants correctly point out, that would not create the same situation as was potentially present in *Schwartz*, where attributing a Michigan principal place of business to EDS would have made it a Michigan citizen. In this case, if StarLink is deemed to have a principal place of business in France, as does Aventis, it would not be a citizen of the same state as Scotts. It would, moreover, retain its status as a United States corporation and a resident of the State of Delaware because that is the state of its incorporation. Consequently, application of the first exception noted in *Schwartz* would not change the result here. Neither argument presented by plaintiffs persuades the Court that the removal of this case was improper or that diversity jurisdiction is lacking.

### III.

Based upon the foregoing, the motion of plaintiffs to remand this case to the Court of Common Pleas of Union County, Ohio (file doc. # 7) is DENIED.